IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 10-cr-40070-JAR |
| ) | |
| **CHOUDHRY ZAFAR IQBAL**, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM AND ORDER

This case is before the Court on Defendant's Motion to Withdraw Guilty Plea (Doc. 107) and the Government's Motion for Ruling on the Briefs Regarding Defendant's Motion to Withdraw Guilty Plea (Doc. 114). Defendant argues that the Court should allow him to withdraw his guilty plea because his former counsel incorrectly informed him that his guilty plea would have no adverse consequences on his immigration status and without his reliance on that information he would not have entered the guilty plea. The Government argues that the Court should not allow Defendant to withdraw the plea because he was aware of the deportation consequences of pleading guilty before he entered his plea—they were explained to him both in the plea agreement and during the plea colloquy. Although the Court scheduled an evidentiary hearing for Defendant's motion, the Government's motion asks the Court to decide Defendant's motion without an evidentiary hearing. Defendant agrees that no hearing is necessary. The motions are fully briefed, and the Court is prepared to rule. The Court grants the Government's motion because it is unopposed. As explained more fully below, the Court denies Defendant's motion because the deportation consequences were explained to Defendant in the plea agreement and during the plea colloquy, curing any deficient advice that may have been given by his former

counsel.

## I.     Procedural Background

Defendant was indicted on June 30, 2010.  The Indictment charged one court of arson occurring on or about March 11, 2007, in violation of 18 U.S.C. § 844(i).  Assistant Federal Public Defender Marilyn Trubey was appointed to represent Defendant.  On August 30, 2010, the Court designated the case as complex and pretrial proceedings commenced.  On September 7, 2011, a Superseding Indictment was filed, charging Defendant with eight counts: (1) Arson, in violation of 18 U.S.C. § 844(i), (2) Using Fire and Explosives to Commit Wire and Mail Fraud, in violation of 18 U.S.C. § 844(h), (3) Wire Fraud, in violation of 18 U.S.C. § 1343, (4) Making False Statement to Federal Agents, in violation of 18 U.S.C. § 1001, (5) Mail Fraud, in violation of 18 U.S.C. § 1349, (6) Making False Statements to Federal Agents, in violation of 18 U.S.C. § 1001, (7) Mail Fraud, in violation of 18 U.S.C. § 1349, and (8) Mail Fraud, in violation of 18 U.S.C. § 1349.

The Court held a change-of-plea hearing on December 12, 2011.  Defendant and the Government entered into a plea agreement as to Count 3 of the Superseding Indictment.  In the plea agreement, the Government agreed to make a non-binding recommendation to the Department of Homeland Security that Defendant not be deported, but Defendant acknowledged that the offense to which he pleaded guilty is a removable offense and that no one can predict with certainty the effect of conviction on his immigration status.  Defendant affirmed in the plea agreement that he wanted to plead guilty regardless of any immigration consequences.  During the plea colloquy, the Court asked Defendant if he understood that if he is not a native-born American or naturalized citizen of the United States, he may be deported as a result of the guilty

plea. Defendant testified that he understood. The Court also informed Defendant that even though the Government was recommending that he not be deported, the Court could not say whether he would or would not be deported. Defendant again stated that he understood. After the plea colloquy, Defendant entered a plea of guilty to Count 3 of the Superseding Indictment and the Court found that the plea was knowing and voluntary and supported by an independent basis in fact containing each of the essential elements of the offense.

On February 14, 2012, Defendant's attorney, Marilyn Trubey, withdrew because she was retiring from the office of the Federal Public Defender for the District of Kansas, and current counsel Ron Wurtz entered his appearance as substitute counsel. The Presentence Investigation Report was filed on February 27, 2012, with objections by Defendant that had been submitted by Ms. Trubey before her retirement. Mr. Wurtz then requested a continuance of the sentencing hearing so that he could become familiar with the case and prepare for the sentencing hearing. After Mr. Wurtz discovered possible legal issues, he again requested a continuance to address those issues. Defendant then filed his motion to withdraw the guilty plea.

At a scheduling conference held on June 12, 2011, Mr. Wurtz explained his concerns that the motion to withdraw the guilty plea might present a conflict of interest because it asserted ineffective assistance of counsel by Ms. Trubey, with whom Mr. Wurtz had worked in Federal Public Defender's office. To alleviate the concerns over the possible conflict of interest, the Court appointed separate counsel, John Kerns, to address Defendant's motion to withdraw the guilty plea.

The Court set a hearing for August 17, 2011 to address Defendant's motion to withdraw the guilty plea. The Government then filed its motion requesting the Court resolve Defendant's

motion without a hearing. Mr. Kerns responded, stating that Defendant also agreed that the motion to withdraw the guilty plea could be resolved without a hearing.

**II.     Legal Standard**

Under Federal Rule of Criminal Procedure 11(d)(2)(B), a defendant may withdraw a plea of guilty after the Court accepts the plea but before it imposes sentence if the defendant can show a fair and just reason for requesting the withdrawal.[1] The burden falls on the defendant to demonstrate a fair and just reason for the request.[2] In determining whether a defendant meets the burden, the court considers the following factors: "(1) whether the defendant has asserted his innocence, (2) prejudice to the government, (3) delay in filing defendant's motion, (4) inconvenience to the court, (5) defendant's assistance of counsel, (6) whether the plea is knowing and voluntary, and (7) waste of judicial resources."[3] But the decision of whether to allow a defendant to withdraw a guilty plea "ultimately lies 'within the sound discretion of the district court to determine' on a cases by case basis."[4]

**III.    Discussion**

Defendant's motion relies heavily on two interrelated factors—defendant's assistance of counsel and whether the plea was knowing and voluntary—both based on Defendant's assertion of ineffectiveness on the part of his former counsel. Defendant further asserts that he has consistently maintained his innocence to the charge of arson. Defendant also briefly addresses

---

[1] Fed. R. Crim. P. 11(d)(2)(B).

[2] *United States v. Hamilton*, 510 F.3d 1209, 1214 (10th Cir. 2007) (citing *United States v. Black*, 201 F.3d 1296, 1299 (10th Cir. 2000)).

[3] *United States v. Gordon*, 4 F.3d 1567, 1572 (10th Cir. 1993).

[4] *United States v. Soto*, 660 F.3d 1264, 1267 (10th Cir. 2011) (quoting *Gordon*, 4 F.3d at 1572).

the remaining factors.

### A.     Ineffective Assistance of Counsel

Throughout this case, during plea negotiations and at the change-of-plea hearing, Defendant has been represented by counsel.  Defendant, however, argues that the Court should permit him to withdraw his guilty plea because he received ineffective assistance of counsel when his former counsel, who represented him before and during the change-of-plea hearing, incorrectly assured him that his plea would not affect his immigration status.

When a defendant seeks to withdraw a guilty plea based on ineffective assistance of counsel, the Court must apply the two-part test established in *Strickland v. Washington*.[5]  Under this test, Defendant "'must show *both* (1) that counsel's performance was deficient *and* (2) that this deficiency prejudiced [his] defense.'"[6]  To establish the first prong of the *Strickland* test, Defendant must show that counsel's performance fell outside "'the wide range of professional competent assistance' demanded by the Sixth Amendment."[7]  To establish the second prong of the *Strickland* test, Defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[8]

Here, the Court need not determine whether Defendant has met his burden under the first prong, however, because Defendant has failed to show that he suffered prejudice as a result of

---

[5] 466 U.S. 668 (1984); *see also Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

[6] *Hamilton*, 510 F.3d at 1216 (quoting *United States v. Carr*, 80 F.3d 413, 417 (10th Cir. 1996)).

[7] *Hill*, 474 U.S. at 62 (quoting *Strickland*, 466 U.S. at 691).

[8] *Id.* at 58.

his counsel's representations regarding how his guilty plea might affect his immigration status.[9] Even if his counsel incorrectly informed him that he would not be deported, Defendant had been fully advised of the deportation consequences of pleading guilty before he entered the guilty plea.

Defendant's plea agreement specifically addresses the deportation consequences of Defendant's guilty plea:

> The parties acknowledge and understand that the United States Attorney's Office for the District of Kansas shall, pursuant to this agreement, make the non-binding recommendation to the Department of Homeland Security that this defendant not be deported to Pakistan. However, defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding. However, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.[10]

At the end of the agreement, Defendant acknowledged the he read the plea agreement, understood it, and agreed it is true and accurate and not the result of any threats, duress, or coercion. Defendant has not argued that he did not actually read and understand the plea agreement.

Also during the plea colloquy, the Court explained that if Defendant is not a native-born American or a naturalized citizen of the United States, he may be deported. In response,

---

[9] *See Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

[10] Plea Agreement, Doc. 95 at 15.

Defendant stated that he understood. The Court also discussed the Government's recommendation that Defendant not be deported and explained to Defendant that the Court could not say whether he would or would not be deported. Defendant again stated that he understood and did not ask the Court for clarification. And that Defendant did not ask for clarification is significant because at other points during the plea colloquy, Defendant stopped the proceeding and consulted with his attorney. For example, when the Court explained that by pleading guilty he was giving up his right to call witnesses and present evidence for the determination of his guilt, Defendant consulted with his attorney. His attorney then told the Court that Defendant was concerned about being able to produce evidence at the sentencing hearing. The Court clarified for Defendant that he would be able to present evidence concerning his sentence but not on his guilt or innocence. Defendant, however, did not ask for any clarification when the Court told him that he could be deported, which suggests he understood the Court's instruction on the deportation consequences of pleading guilty. Also, Defendant has also not argued in his motion that he did not understand the Court when the Court advised him of the possible deportation consequences.

In light of the Court's plea colloquy, the parties' written plea agreement, and Defendant's testimony that he understood the possible deportation consequences of pleading guilty, the Court finds that Defendant was sufficiently advised of the deportation consequences of his plea, curing any potential deficient advice from his counsel. Still, even after the sufficient explanation of the deportation consequences, Defendant chose to plead guilty. As a result, Defendant's *post hoc* allegation that he would have gone to trial but for his former counsel's incorrect information about deportation is insufficient to establish prejudice. Because Defendant cannot establish

prejudice, his argument fails under *Strickland*. Thus, the assistance of counsel factor does not weigh in his favor.

### B. Knowing and Voluntary Plea

To the extent Defendant's argument that his plea was not knowing and voluntary is based on his counsel's misinformation, the Court finds it unpersuasive for the same reasons identified above. Defendant also seems to suggest, without directly asserting, that the Court's Rule 11 plea colloquy inadequately assessed whether Defendant fully understood the charge to which he pleaded guilty and the immigration consequences of the guilty plea. Specifically, Defendant claims that:

> a number of red flags . . . signal the need for a more careful inquiry to assure the understanding demanded by the Constitution and Rule 11: (1) Mr. Iqbal's understanding of English is less than perfect; (2) even with an interpreter he had some obvious difficulty understanding during the plea colloquy (Court: Whose decision was it to enter into this plea agreement? Defendant: "Yes"); (3) the elements of the offense of conviction were never discussed with the defendant in the plea process; (4) pure facts that constitute defendant's acts are not discussed, *i.e.*, the defendant's statements to the insurance agent, the defendant's knowledge that the fire was arson, the amount of loss, etc.; (5) the apparent threat that his wife may be charged.[11]

The Court finds Defendant's reference to "a number of red flags" insufficient to show that his plea was not knowing and voluntary. First, any time during the change-of-plea that it appeared Defendant had a question or did not understand something being said, the Court clarified itself or asked Defendant follow-up questions so that it was clear Defendant understood all of the consequences of the guilty plea and that his plea was voluntary. Also, as explained above, Defendant has not argued that he did not understand the Court at the change-of-plea hearing

---

[11]Mot. to Withdraw Guilty Plea, Doc. 107 at 10.

when it explained the deportation consequences, he has not argued that he did not understand the plea agreement, he has not argued testimony at the hearing was false or incorrect, and he testified at the change-of-plea hearing that no one forced, threatened, or pressured him to enter the plea of guilty. Defendant also testified that he made the decision to enter the plea voluntarily and of his own free will. Given Defendant's own testimony at the change-of-plea hearing, the Court finds that Defendant knowingly and voluntarily entered his plea of guilty, fully understanding the charge to which he pleaded guilty and the immigration consequences of the guilty plea. Thus, this factor also weighs against Defendant.

### C. Assertion of Innocence

Intermingled with Defendant's first two arguments is Defendant's argument that he asserts his innocence. Defendant argues that he "has always maintained his innocence of the arson of his business,"[12] the underlying basis for the fraud to which he plead guilty. As the Government points out, however, Defendant does not assert his innocence to the offense which he plead guilty—wire fraud. In the plea colloquy, Defendant admitted under oath that he received a phone call from a claims representative about the fire at the Kwik Shop, that he talked to that representative, and that the conversation was part of his scheme to defraud the insurance company. Defendant also stated that he believes the Government has the evidence to prove these factual allegations. Defendant does not claim that he made any false statements during the plea colloquy nor has he repudiated his admission to the factual basis for his guilt as to Count 3.[13] And although he claims he did not commit arson, Defendant does not claim innocence as to

---

[12] *Id.* at 4.

[13] *United States v. Hassan*, 267 F. App'x 712, 717 (10th Cir. 2008) ("He admitted to the factual basis underpinning those counts at his change of plea hearing, and he has not since repudiated that admission.").

Count 3, Wire Fraud. "The question here is whether the Defendant claims innocence as to the charge to which he pleaded. He does not, and this factor thus weighs against allowing withdrawal."[14]

### D.     Remaining Factors

Defendant spends far less time on the remaining factors, providing only a sentence or two for each. Because the Court did not find that Defendant met his burden with the factors listed above, the Court need not address the remaining factors.[15] But the Court will nonetheless address these arguments to fully consider all circumstances affecting the fairness and justice of this case.

#### 1.     Prejudice to the Government

The prejudice to the government that would follow withdrawal weighs against Defendant. If the Court allows Defendant to withdraw his guilty plea, the Government would be required "to undergo much of the same process it already has completed"[16] and to prepare for an unanticipated complex trial.[17] "In a case such as this, which the court designated as complex . . . , the prejudice to the Government is more obvious because trial preparation would entail considerable effort."[18] Not only has this case been designated as complex, but the Government states that it would have to present evidence and testimony concerning events going back to

---

[14]*United States v. Graham*, 466 F.3d 1234, 1238 (10th Cir. 2006) (citing *United States v. Siedlik*, 231 F.3d 744, 749 (10th Cir. 2000)).

[15]*United States v. Hamilton*, 510 F.3d 1209, 1217 (10th Cir. 2007).

[16]*Siedlik*, 231 F.3d at 749.

[17]*Hassan*, 287 F. App'x at 717.

[18]*Id.*

2007. Additionally, the Government estimates that the complex nature of the case would cause trial to last three weeks. Considering all of the circumstances of this case and the prejudice to the Government, this factor weighs against withdrawal.

### 2. Delay in Filing Defendant's Motion

While the delay in filing does not necessary weigh against Defendant, it does not weigh in his favor. Defendant filed his motion for withdrawal over five months after entering his guilty plea and nearly three months after the presentence investigation report was filed. The Tenth Circuit has found that this amount of delay can weigh against a defendant.[19] But here, much of the delay was caused by the change in counsel after Defendant entered his guilty plea. Defendant's current counsel needed time to review the files and the court record and consult with the opposing counsel and the PSR writer. Still, given the significant delay, the Court cannot find that this factor weighs in favor of allowing withdrawal.

### 3. Inconvenience to the Court and Waste of Judicial Resources

Inconvenience to the court and waste of judicial resources both trigger similar concerns.[20] Here, both factors weigh against withdrawal. This Court has already spent considerable time on pretrial matters, addressing pretrial motions, setting pretrial deadlines, resetting pretrial deadlines, and setting sentencing matters. This case has been pending and active before this Court for over two years. If the Court allowed Defendant to withdraw the plea, it would have to retread much of the same ground it has already covered. Moreover, "[s]cheduling a last-minute

---

[19]*See United States v. Carr*, 80 F.3d 413, 420 (10th Cir. 1996) (finding that a three-month delay weighed against the defendant); *United States v. Vidakovich*, 911 F.2d 435, 439–40 (10th Cir. 1990) (finding that a five-month delay weighed against the defendant).

[20]*United States v. Graham*, 466 F.3d 1234, 1239 (10th Cir. 2006).

11

trial in a complex case would necessarily disrupt the court's docket and cause delays in other cases."[21]  The three-week anticipated trial length would only compound the inconvenience the court will suffer.  Thus, both inconvenience to the Court and waste of judicial resources weigh against Defendant.

**IV.     Conclusion**

After considering all of the factors and circumstances presented by this case, the Court finds that Defendant has not demonstrated a fair and just reason for his request to withdraw his guilty plea.  Because both parties agree that no hearing on the motion is necessary, the Court grants the Government's motion to decide the motion on the briefs without an evidentiary hearing.  The Court therefore denies Defendant's motion to withdraw his plea of guilty.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Withdraw Guilty Plea (Doc. 107) is DENIED.

**IT IS FURTHER ORDERED BY THE COURT** that the Government's Motion for Ruling on the Briefs Regarding Defendant's Motion to Withdraw Guilty Plea (Doc. 114) is GRANTED.

**IT IS SO ORDERED**.

Dated: August 2, 2012

 S/ Julie A. Robinson

JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE

---

[21] *Hassan*, 287 F. App'x at 717.